**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVIE MITCHELL,<br><br>*Plaintiff*,<br><br>vs.<br><br>KG AUTOMOTIVE PITTSBURGH LLC d/b/a KEN GANLEY TOYOTA,<br><br>*Defendant*. | ) | Civil Action No.<br><br>Filed Electronically |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Davie Mitchell, by and through the undersigned counsel, files the following Complaint against Defendant, KG Automotive Pittsburgh LLC d/b/a Ken Ganley Toyota, averring as follows:

## THE PARTIES

1. Plaintiff, Davie Mitchell ("Plaintiff"), is an African American male and adult individual who resides in Pittsburgh, Pennsylvania 15210.

2. Defendant, KG Automotive Pittsburgh LLC d/b/a Ken Ganley Toyota ("Defendant"), is a foreign limited liability company with a registered address of 600 North Second Street, Suite 401, Harrisburg, PA 17101. Defendant's principal place of business is located at the same address. Relevant hereto is Ken Ganley Toyota where Plaintiff reported to work on a regular basis to Defendant's facility located at 1110 Clairton Boulevard, Pleasant Hills, Pennsylvania, 15236 (the "Facility").

## JURISDICTION AND VENUE

**A. This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331**

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981")

**B. The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

4. Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (hereinafter, the "Western District") as a substantial part of the events and omissions giving rise to the claims made herein occurred within this judicial district. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Specifically, these events and omissions occurred within Allegheny County, Pennsylvania, which is one of the counties encompassed by the Western District.

6. This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Clairton in the Pleasant Hills of Allegheny County, Pennsylvania, specifically at or around Defendant's facility located at 1110 Clairton Boulevard, Pleasant Hills, Pennsylvania, 15236, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C. This Court May Exercise Personal Jurisdiction Over Defendant.**

7. This Court may exercise personal jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court's exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.

8. Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction

pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

9. 42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations:
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth. See: 42 Pa. C.S. § 5301(a).

10. Defendant maintains the Facility in Pleasant Hills, Pennsylvania and conducts business operations within Pennsylvania. Accordingly, Defendant may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

**D. Plaintiff Has Exhausted His Administrative Remedies; His Claims are Properly Before This Court.**

11. Plaintiff has satisfied all procedural and administrative prerequisites under 42 U.S.C. § 2000e-5 and 43 P.S. § 959 and may now proceed to bring this action before the Court. Specifically:

a. On or about November 17, 2025, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for his claims at charge number 533-2026-00397 (the "EEOC Charge").

b. On December 16, 2025, the EEOC issued the Notice of Right to Sue ("RTS Notice"),

affording Plaintiff 90 days within which to timely file the Federal Law Claims and the State Law Claims.

c. The instant complaint is filed within the 90-day time period.

## FACTUAL BACKGROUND

12. Plaintiff commenced his employment with Defendant on or about February 28, 2025, in the position of Lot Attendant at Defendant's facility in Pleasant Hills, Pennsylvania (the "Facility").

13. Plaintiff was responsible for preparing sold vehicles for customers, including filling the gasoline tank and cleaning vehicles, and was compensated at $13.00 per hour.

14. Plaintiff's direct supervisor was Ed (last name unknown), the Used Car Manager.

### Racial Harassment

15. Plaintiff is an African American male.

16. While working at Defendant’s Facility Plaintiff experienced several racial incidents, comments, and a racially discriminatory environment.

17. Racial comments were made to Plaintiff that were unsolicited, inappropriate, and singled out Plaintiff on the basis of his African American race in a manner that Plaintiff felt dismissed, disrespected, excluded, and unsafe because of his African American race.

18. On one occasion within weeks of his hire, a coworker Tom (last name unknown) asked Plaintiff, in reference to a local restaurant, "Why? Because it ain't ghetto enough?"

19. Plaintiff reported this racially charged comment to his direct supervisor Ed, who stated Plaintiff "shouldn't have to deal with that" but Defendant took no corrective action.

20. Shortly thereafter, after Defendant hired another African American employee, Josh Rollins, Tom and coworker Mike (last name unknown) stated, "Now we got two," in Plaintiff's

presence.

21. Plaintiff again reported this racist behavior to his supervisor Ed, but again Defendant took no corrective action.

22. Despite notifying Defendant of co-workers making racially discriminatory, negative, stereotypical and demeaning comments about Plaintiff's African American race Defendant took no action to correct said behavior or prevent it from recurring in the future.

**The June 25, 2025 Assault**

23. On or about June 25, 2025, another event occurred at the Defendant's facility as a result of Plaintiff's African American race.

24. On said date, at approximately 8:30 a.m., an older white Parts Van Driver (name unknown) confronted Plaintiff in the parking lot, called him a "nigger," threatened him stating, "I got something I can injure [you with]," and ultimately swung a fist at him.

25. The assault was witnessed by Defendant's employees: Dave (last name unknown), the Manager of Parts, and employee Mark (last name unknown).

26. After said assault, Plaintiff immediately called his direct supervisor Ed to report the incident.

27. Plaintiff also sent an email to Ed that same day documenting the assault.

28. In response, Ed assured Plaintiff that Human Resources would be notified.

29. HR never contacted Plaintiff.

30. No follow up investigation into the June 25, 2025, incident occurred.

31. No disciplinary action was taken as a result of the June 25, 2025, altercation.

**Termination and Disparate Treatment**

32. On September 24, 2025, Plaintiff worked his scheduled shift.

33. Also on said day, Plaintiff voluntarily stayed nearly two hours after his regularly scheduled shift.

34. Plaintiff stayed past his normal shift to assist a new hire.

35. At approximately 6:10 p.m., salesman Aiden (last name unknown) asked Plaintiff to prepare another car.

36. Plaintiff declined salesman Aiden's request.

37. Plaintiff declined his request indicating he needed to leave to pick up his younger brother.

38. The very next day, on or about September 25, 2025, approximately 30 minutes into his shift, manager Bob (last name unknown) terminated Plaintiff.

39. Manager Bob indicated Defendant was terminating Plaintiff, stating the reason was "because you didn't do a car the day before."

40. This stated reason is pretextual.

41. Other similarly situated employees as Plaintiff of Defendant have refused to prepare vehicles, as Plaintiff did, without being terminated.

42. A white coworker Anthony "Tony" Thor has refused to prepare vehicles for Defendant and was not terminated.

43. Tony repeatedly refused to prepare vehicles on no fewer than six occasions, including a "big argument" with salesman Scott (last name unknown) that occurred in front of Ed.

44. Despite this pattern of insubordination, Tony was never terminated and it is believed he remains employed by Defendant.

45. Plaintiff, an African American employee who complained about racial harassment, was terminated for declining one task after his shift ended.

46. White employees of Defendant in the same or similar role of employment as Plaintiff who engaged in the same or worse conduct, of which was the pretextual reason of Plaintiff's termination, were not fired.

**<u>COUNT I</u>**
**RACIAL DISCRIMINATION AND WRONGFUL TERMINATION IN VIOLATION OF TITLE VII,AND 42 U.S.C. § 1981**
**42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981**

47. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

48. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees on the basis of race. 42 U.S.C. § 2000e-2(a)(1).

49. Section 1981 of the Civil Rights Act of 1866 guarantees all persons "the same right ... to make and enforce contracts ... as is enjoyed by white citizens," which includes the right to enter into and maintain employment relationships free from racial discrimination. 42 U.S.C. § 1981(a); see also *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450 (2008).

50. To establish a *prima facie* case of race discrimination under Title VII, a plaintiff must demonstrate: (1) they are a member of a protected class; (2) they were qualified for the position; (3) they suffered an adverse employment action; and (4) the circumstances give rise to an inference of unlawful discrimination, such as being treated less favorably than similarly situated employees outside the protected class. *Moye v. Verland Found.*, Civil Action No. 2:21-cv-646, 2022 U.S. Dist. LEXIS 156750, at *12 (W.D. Pa. July 26, 2022)

**A. Plaintiff is a Member of a Protected Class.**

51. Plaintiff is an African American male and is therefore a member of a protected class under Title VII and Section 1981.

**B. Plaintiff Was Qualified for His Position and Performed Satisfactorily.**

52. Plaintiff commenced employment with Defendant on or about February 28, 2025, as a Lot Attendant and was responsible for preparing sold vehicles for customers.

53. At all times material, Plaintiff performed his duties diligently and competently.

54. Plaintiff never received any formal disciplinary action or negative performance reviews prior to his termination.

55. Plaintiff was qualified to perform the essential duties of his position.

**C. Plaintiff Suffered an Adverse Employment Action.**

56. On September 25, 2025, Defendant terminated Plaintiff's employment.

57. Termination constitutes the ultimate adverse employment action.

**D. The Circumstances Give Rise to an Inference of Discrimination.**

58. Plaintiff was subjected to a severe and pervasive racially hostile work environment, including racially charged comments and a physical assault accompanied by a racial slur.

59. Defendant failed to take any meaningful corrective action despite Plaintiff's repeated complaints to management.

60. Plaintiff was terminated shortly after complaining about racial harassment, creating temporal proximity between his protected activity and his termination.

61. Defendant treated similarly situated white employees more favorably than Plaintiff, as evidenced by the disparate treatment of Plaintiff compared to one example, Anthony "Tony" Thor.

62. Specifically, Tony Thor, a white employee, repeatedly and willfully refused to prepare vehicles on no fewer than six occasions and engaged in a "big argument" with management, and yet he was never terminated.

63. In stark contrast, Plaintiff, an African American employee who had complained

about racial harassment, was terminated for a single instance of declining to perform a task nearly two hours after his regularly scheduled shift had ended.

64. This disparate treatment supports a strong inference of racial discrimination.

**E. Defendant's Stated Reason for Termination is Pretextual.**

65. Even if Defendant articulates a legitimate, non-discriminatory reason for Plaintiff's termination, the evidence demonstrates that such reason is pretextual.

66. Defendant stated that Plaintiff was terminated "because you didn't do a car the day before."

67. This reason is demonstrably false and pretextual given that Plaintiff was asked to perform the task at approximately 6:10 p.m., nearly two hours after his scheduled shift ended, and after he had already voluntarily stayed late to assist a new hire.

68. Furthermore, Plaintiff had a legitimate family obligation to pick up his younger brother, of which his supervisor Ed was aware.

69. The stated reason is further undermined by the disparate treatment of Plaintiff versus white co-workers.

70. The selective application of discipline demonstrates that Defendant's stated reason is pretextual and the actual motivation was Plaintiff's race and retaliation for his complaints about racial harassment.

71. Defendant's pattern of tolerating and condoning racially hostile conduct, combined with the disparate treatment of similarly situated white employees, establishes that Defendant's stated reason is a pretext for unlawful discrimination.

**F. Plaintiff is Entitled to Damages.**

72. As a direct and proximate result of Defendant's discriminatory conduct in violation

of Title VII, and Section 1981, Plaintiff has suffered tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits.

73. Plaintiff has also suffered substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries.

74. Plaintiff is entitled to punitive damages under Section 1981, as Defendant engaged in discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights. See: 42 U.S.C. § 1981a(b)(1).

75. At all times relevant herein, Defendant acted with knowledge that it was lawfully required to provide a workplace free of racial discrimination to individuals like Plaintiff who were statutorily protected.

WHEREFORE, Plaintiff, Davie Mitchell, seeks a judgment against Defendant, KG Automotive Pittsburgh LLC d/b/a Ken Ganley Toyota, for willful noncompliance with Title VII, and Section 1981 and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including back pay, front pay, suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature; (iii) equitable relief, including reinstatement if appropriate; (iv) pre-judgment interest; (v) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988; and (vi) any further legal and equitable relief as this Court may deem just and proper.

**COUNT II**
**HOSTILE WORK ENVIRONMENT BASED ON RACE**
**IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e, *et seq.***

76. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

77. To establish a hostile work environment claim under Title VII, a plaintiff must show that "(1) the employee suffered intentional discrimination because of his/her [protected class], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the Plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." See *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

78. The Third Circuit has also noted that "severe or pervasive" is the correct standard under which to apply a totality of the circumstances approach in examining "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

**A. Plaintiff Suffered Intentional Discrimination Because of His Race.**

79. As averred and stated above, throughout the course of his employment, Plaintiff was targeted with intentional discrimination by his coworkers based on his African American race with a pattern of racial comments, epithets, and treatment as directed at Plaintiff.

80. Plaintiff's coworkers made racist comments to him, including a coworker calling him in the nigger before swinging at him.

81. Plaintiff, an African American, was subjected to disparate treatment and termination for refusing to prepare a car when at least one white coworker was not disciplined let

alone terminated for doing the same.

82. Plaintiff was intentionally targeted with racially hostile comments, threats, and physical assault because he is African American and notified Defendant of the same with Defendant taking no corrective action.

**B. The Discrimination Plaintiff Endured Was Severe and Pervasive.**

83. At all times relevant hereto, the discrimination Plaintiff experienced was both "severe" and "pervasive."

84. The "severe or pervasive" standard requires conduct that is sufficient "to alter the conditions of [the employee's] employment and create an abusive working environment." *Id.*

85. Furthermore, whether an environment is "sufficiently hostile or abusive" is measured through a totality of the circumstances including the frequency, the severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's workplace performance. See *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).

86. Defendant's conduct, through Plaintiff's coworkers, was at all times unconsented to by Plaintiff, interfered with the performance of his work duties by affecting Plaintiff's sense of safety, comfort, sense of belonging and persisted throughout his entire tenure at Defendant.

87. The harassment began within weeks of Plaintiff's hire with racially charged comments and escalated to a physical assault accompanied by a co-worker calling him a Nigger while at work at Defendant's Facility.

88. The frequency of the harassment was constant, beginning with Tom's "ghetto" comment, continuing with Tom and Mike's "Now we got two" comment, and culminating in the June 25, 2025 assault.

89. The severity of the harassment cannot be overstated: Plaintiff was called a "nigger," physically threatened, and physically attacked by a coworker in Defendant's parking lot during

work hours.

90. The harassment was physically threatening and humiliating, creating an environment where Plaintiff could not safely perform his job duties and unreasonably interfered with Plaintiff's ability to perform his work.

91. As such, the quality and quantity of discrimination perpetuated by Plaintiff's coworkers, as was reported to management, quickly pervaded Plaintiff's entire work environment and was sufficiently "severe" in nature to satisfy the second element of Plaintiff's prima facie burden.

**C. The Discrimination Detrimentally Affected Plaintiff.**

92. As averred hereinabove, the racial harassment was the direct and proximate cause of detrimental effects on Plaintiff's emotional state, sense of safety, and work environment.

93. Specifically, Plaintiff was forced to endure racially charged comments that demeaned him and created a hostile atmosphere.

94. Plaintiff was subjected to a physical assault accompanied by being called a nigger, which caused him to fear for his safety in the workplace.

95. Despite Plaintiff's attempts to deter the harassment by reporting it to management, it persisted with no corrective action taken by Defendant despite Plaintiff's pleas for his supervisor Ed to address the same.

96. As a direct and proximate cause of the hostile work environment, Plaintiff was forced to work in a racially abusive environment and was ultimately terminated from employment with Defendant.

97. The racial harassment, combined with the loss of his employment with Defendant, detrimentally affected Plaintiff.

**D. The Discrimination Plaintiff Suffered Would Detrimentally Affect a Reasonable Person in Like Circumstances.**

98. As averred hereinabove, Plaintiff was subjected to racially charged comments, racial epithets, and physical assault.

99. Any reasonable African American person in Plaintiff's position would find such conduct hostile and abusive.

100. A reasonable person would find being asked "Why? Because it ain't ghetto enough?" to be a racially offensive and demeaning comment.

101. A reasonable person would find being referred to as "the other one" and being the subject of "Now we got two" in reference to a new African American co-worker to be comments that are dehumanizing and racially hostile.

102. A reasonable person would find being called a “nigger,” being threatened, and physically attacked in the workplace to be severe, hostile, and abusive.

103. Indeed, any reasonable African American person in Plaintiff's circumstances would find the environment created by these incidents to be hostile and abusive.

**E. Respondeat Superior Liability Exists Due to Defendant's Overt Role in Facilitating the Discrimination.**

104. Respondeat superior liability attaches to an employer for a hostile work environment created by its employees when a supervisor creates the hostile environment or when the employer is negligent in failing to prevent or remedy the harassment after having notice of it. *Murphy v. Hotwire Commc'ns*, LLC, No. 19-5901, 2020 BL 168067, at *5 (E.D. Pa. May 5, 2020) citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 26 (3d Cir. 1997)

**I. The Harassment Occurred Within the Scope of Employment.**

105. At all times relevant herein, the hostile conduct perpetuated by Plaintiff's coworkers occurred at the Facility and during Plaintiff and his coworkers' scheduled working hours.

106. More specifically, the hostile conduct occurred while Plaintiff's coworkers were performing their job duties.

107. The June 25, 2025, incident where Plaintiff was called a “nigger”, threatened, then assaulted occurred in Defendant's parking lot during work hours and was witnessed by Defendant's Manager of Parts.

108. As such, the tortious conduct occurred within the scope of the harassers' employment.

**II. Defendant Was Negligent and Reckless in Its Failure to Discipline, Fire, or Take Remedial Action Upon Notice of the Harassment.**

109. At all times relevant herein, Defendant was aware of the hostile conduct as Plaintiff reported the harassment to his supervisor Ed on multiple occasions.

110. Plaintiff reported Tom's "ghetto" comment to Ed, who stated Plaintiff "shouldn't have to deal with that" but then took no corrective action.

111. Plaintiff reported Tom and Mike's "Now we got two" comment, in reference to a new African American co-worker, to his supervisor Ed, who again took no action.

112. Plaintiff reported the June 25, 2025, incident wherein he was called a “nigger”, threatened, and then assaulted to his supervisor Ed immediately after the incident and sent a contemporaneous email documenting same.

113. Ed and another senior manager assured Plaintiff that Human Resources would be notified and would follow up.

114. Despite these repeated reports and assurances, HR never contacted Plaintiff, no investigation was conducted, and no disciplinary action was taken against any of the harassers.

115. Even after Plaintiff reported that Ed's verbal assurances were ineffective and no action was being taken, Defendant failed to implement any remedial measures.

116. Defendant's complete failure to investigate, discipline, or take any corrective action upon repeated notice of severe racial harassment constitutes negligence and recklessness.

**III. Defendant Aided the Harassment by Failing to Respond to Plaintiff's Complaints.**

117. As averred hereinabove, Plaintiff's direct supervisor Ed and other managers had actual knowledge of the hostile behavior directed at Plaintiff and the severe nature of the harassment.

118. Rather than correct the hostile behavior, Defendant instead chose to and did nothing, effectively accepting and permitting the harassment to continue unabated.

119. Defendant aided the harassers by choosing to ignore Plaintiff's complaints, despite having actual knowledge that Plaintiff was subjected to racial epithets and physical assault.

120. Defendant aided the harassers by promising to notify HR and investigate but then took no action whatsoever.

121. Defendant's failure to respond to Plaintiff's complaints created an environment in which the harassers knew they could engage in racially hostile conduct with impunity.

122. Accordingly, respondeat superior liability attaches to Defendant as it failed in its duty as an employer to properly discipline its employees in furtherance of its duty to provide a work environment free of racial hostility.

123. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Davie Mitchell, seeks a judgment against Defendant, KG

Automotive Pittsburgh LLC d/b/a Ken Ganley Toyota, for willful noncompliance with Title VII and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature; (iii) equitable relief in the forms of back pay and front pay; (iv) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 42 U.S.C. § 2000e-5(k); (v) pre-judgment and continuing interest as calculated by the EEOC; and (vi) any further legal and equitable relief as this Court may deem just and proper.

**COUNT III**
**RETALIATION IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e-3(a)**

124. Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

125. Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee because he has opposed any practice made unlawful by Title VII or has participated in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

126. To establish a prima facie case of retaliation under the McDonnell Douglas framework, a plaintiff must show: (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal connection between the protected activity and the adverse action. See *Kengerski v. Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020).

127. Causation may be established through temporal proximity, a pattern of antagonism following the protected activity, inconsistencies in the employer's stated reasons, or

other evidence from which an inference of retaliatory animus can be drawn. See *Cooper v. Fayette Cty.*, No. 2:24-CV-01213-MJH, 2025 U.S. Dist. LEXIS 200959, at *10 (W.D. Pa. Oct. 10, 2025)

**A. Plaintiff Engaged in Protected Activity.**

128. At all times relevant herein, Plaintiff engaged in protected activity by repeatedly complaining, as averred herein, to his supervisor Ed about racial harassment in the workplace.

129. Complaints about racial discrimination are per se protected activity under Title VII, even when made informally to a supervisor.

**B. Defendant Took an Adverse Employment Action Against Plaintiff.**

130. On September 25, 2025, Defendant terminated Plaintiff's employment.

131. Termination is the quintessential adverse employment action under Title VII.

**C. There is a Causal Connection Between Plaintiff's Protected Activity and His Termination.**

132. The causal connection between Plaintiff's protected activity and his termination is established through multiple types of evidence.

133. Temporal proximity exists between Plaintiff's complaints and his termination wherein his reporting of racial discrimination, coupled with his disparate treatment, is in temporal proximity to his termination.

134. Disparate treatment demonstrates retaliatory animus. Plaintiff was terminated for declining one task after his shift ended, while a white employee who repeatedly refused to perform those same job duties during work hours was not terminated.

135. The pretextual nature of Defendant's stated reason supports a finding of retaliation. Defendant claimed Plaintiff was terminated "because you didn't do a car the day before," yet Plaintiff was asked to perform the task nearly two hours after his shift ended and after he had

already stayed late to assist a new hire.

136. Defendant's pattern of ignoring Plaintiff's harassment complaints, combined with the swift termination following those complaints, supports an inference of retaliatory animus.

137. Even if Defendant articulates a legitimate, non-retaliatory reason for Plaintiff's termination, the evidence demonstrates that such reason is pretextual.

138. As detailed in Count I, Defendant's selective enforcement of discipline in terminating Plaintiff while tolerating a white co-worker's same act albeit repeatedly and during scheduled work hours demonstrates that the stated reason is a pretext for unlawful retaliation.

139. Defendant's failure to investigate or discipline the employees who harassed Plaintiff, combined with its decision to terminate Plaintiff shortly after he complained, evidences retaliatory intent.

140. As a direct and proximate result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, as well as substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries.

WHEREFORE, Plaintiff, Davie Mitchell, seeks a judgment against Defendant, KG Automotive Pittsburgh LLC d/b/a Ken Ganley Toyota, for willful noncompliance with Title VII and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including back pay, front pay, suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined at trial and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature; (iii) equitable relief, including reinstatement if appropriate; (iv) pre-judgment interest; (v) the costs of

instituting this action together with reasonable attorney's fees incurred by Plaintiff pursuant to 42 U.S.C. § 2000e-5(k); and (vi) any further legal and equitable relief as this Court may deem just and proper.

**JURY DEMAND**

141. Plaintiff requests a trial by jury on all matters so triable.

Respectfully Submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: March 16, 2026

By: *___/s/ Andrew M. Snyder___*
Andrew M. Snyder, Esq. (Pa. I.D. No. 320004)
*/s/ Brendan K. Petrick*
Brendan K. Petrick, Esq. (Pa. I.D. No. 88968)
*/s/ Patrick W. Carothers*
Patrick W. Carothers, Esq. (Pa. I.D. No. 85721)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.9592
Facsimile: 412.910.7510
andrew@workersrightslawgroup.com
brendan@workersrightslawgroup.com
patrick@workersrightslawgroup.com

*Counsel for Plaintiff, Davie Mitchell*